[Docket No. 40]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TESSERA, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SONY ELECTRONICS INC., SONY CORPORATION, SONY MOBILE COMMUNICATIONS AB, SONY MOBILE COMMUNICATIONS (USA), AND RENESAS ELECTRONICS CORPORTATION,<br><br>    Defendants. | Civil No. 10-838 (RMB)(KW)<br><br><br>OPINION |

Appearances:

Philip A. Rovner
Jonathan A. Choa
Potter Anderson & Corroon, LLP
1313 N. Market St., Herclues Plaza, 6th Floor
P.O. Box 951
Wilmington, Delaware 19899

Morgan Chu
Benjamin W. Hattenbach
Melissa R. McCormick
Lisa N. Partain
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067

    Attorneys for Plaintiff

Karen Jacobs Louden
Melissa L. Troutner
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, P.O. Box 1347
Wilimgton, Delaware 19899

Mark G. Davis
Ronald J. Pabis

Michael Franzinger
Patrick J. McCarthy
Weil Gotshal & Manges
1300 Eye Street N.W.
Washington, D.C. 20005

Attorneys for Defendant Renesas Electronics Corporation


BUMB, United States District Judge, Sitting by Designation:

Defendant Renesas Electronics Corporation ("Renesas") has moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California. For the reasons that follow, that motion is DENIED without prejudice.

I.   Background

Plaintiff Tessera Inc. ("Plaintiff" or "Tessera") claims that Renesas and its co-defendants Sony Electronics Inc., Sony Corporation, Sony Ericsson Mobile Communications AB, and Sony Ericsson Mobile Communications (USA) Inc. (collectively, the "Defendants") are engaged in widespread infringement of two of Plaintiff's patents. Specifically, Plaintiff claims the Defendants are infringing: (1) United States Patent No. 6,885,106 (the "106 Patent"); and (2) United States Patent No. 6,054,337 (the "337 Patent"). In general, the patents involve semiconductor packaging technology.

A.   Location of the Parties

Tessera is a Delaware corporation with its principal place of business in San Jose, California. Two of the other

defendants are also Delaware corporations.  Sony Electronics, Inc., is a Delaware corporation with its principal place of business in San Diego, California.  Sony Ericsson Mobile Communications (USA) Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. The remaining defendants, including Renesas, are foreign corporations.  Sony Corporation and Renesas are Japanese corporations with their principal places of business in Japan.  Sony Ericsson Mobile Communications AB is a Swedish corporation with its principal place of business in London, United Kingdom.[1]

B.  <u>Location of Relevant Non-Party Witnesses</u>

There are five named inventors of the '106 Patent.  Three are non-party witnesses and two are party witnesses.  Tessera has submitted declarations from two of the three non-party witnesses stating that they would be willing to testify at trial in Delaware.  The location of the third non-party witness inventor is unknown to Tessera, but Renesas believes he is located in the Northern District of California.  There is no indication, however, that he would refuse to appear voluntarily if asked to appear at trial in this District.

As for the '337 Patent, there is only one named inventor and he is a non-party witness.  Tessera has submitted a

---

[1]     There is some dispute as to the proper identification of Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc.  It is immaterial to the resolution of this motion.

declaration that he also would be willing to travel to Delaware to testify at trial.

There are seven prosecuting attorneys identified in the initial disclosures by Renesas.  All of these witnesses reside in the Northeast United States.  Although it is not clear from the parties' submissions if any of these attorneys are subject to the Court's subpoena power, there is no indication that they would be unwilling to appear in either the District of Delaware or the Northern District of California if called to appear at trial.

Renesas has also identified several third party witnesses who are present in the Northern District of California.  Tessera has noted that it has more than forty licensees dispersed throughout the world.  Like the prosecuting attorneys, there is no indication by any of the parties that these witnesses would be unwilling to appear in either the District of Delaware or the Northern District of California if called to appear at trial.

C.   Location of Relevant Party Witnesses

According to Renesas, any of its potential witnesses likely reside in Japan and, to the extent any are outside of Japan, they would likely reside in the Northern District of California. Any potential witnesses from Sony Corporation reside in Japan and any potential witnesses from Sony Electronics are located in California, where its headquarters are maintained.  Renesas even

4

speaks for Tessera and claims that the Northern District of California is a more convenient forum for Tessera's witnesses than Delaware.

D.  <u>Other Actions in the Northern District of California and Tessera's Forum Selection Clauses</u>

According to Renesas, Tessera has litigated at least seven suits, including three suits involving similar technology to the technology at issue in this litigation, in the Northern District of California.  It also filed an action against Sony Corporation in state court in California related to this action. Renesas also asserts that Tessera routinely enters into agreements calling for California as the choice of forum.

Tessera vigorously disputes Renesas' characterizations of the California lawsuits and counters that, in five of those seven lawsuits, Tessera was the defendant and the Northern District of California was the plaintiff's, not Tessera's, choice of forum.  Moreover, Tessera contends that it has filed only one patent infringement suit in the Northern District of California in the last ten years and that it has filed more patent infringement suits outside of California than in it. Tessera further argues that the patents in this suit have <u>not</u> been the subject of a patent infringement claim in California and that that the Northern District of California Court is not familiar with any of the Defendants in this matter or their

5

products because those cases involved different parties and different products.

II.  Standard

Against this background, Renesas asks this Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] 28 U.S.C. § 1404(a).  The burden of establishing the need for transfer rests with the movant and it is a high burden.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  A "plaintiff's choice of venue should not be lightly disturbed." Id. (quotation and citation omitted).  And, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." In re Xoft, Inc., 435 F. App'x 948, 949-50 (Fed.Cir. 2011)(quotation and citation omitted).  Stated another way, if the factors are evenly balanced or weigh only slightly in favor of the transfer, a transfer will be denied.  Intellectual Ventures I LLC v. Altera Corp., No. 10-1065, 2012 WL 297720, at *3 (D.Del. Jan. 24, 2012)(citations omitted).

---

[2]      There is no dispute here that this action could have been brought in the Northern District of California.

In assessing whether a transfer is appropriate, courts consider both private and public interest factors.  Jumara, 55 F.3d at 879.  The private interest factors include:

    (1)   the plaintiff's forum preference;

    (2)   the defendant's forum preference;

    (3)   where the claim arose;

    (4)   the convenience of the parties as indicated by their relative physical and financial condition;

    (5)   the convenience of the witnesses, but only to the extent they may be unavailable for trial in one of the fora; and

    (6)   the location of books and records (similarly limited to the extent that they could not be produced in the alternative forum).  Id.

The public interest factors include:

    (1)  the enforceability of the judgment;

    (2)  practical considerations that could make the trial easy, expeditious, or inexpensive;

    (3)  the relative administrative difficulty in the two fora resulting from court congestion;

    (4)  the local interest in deciding local controversies at home;

    (5)  the public policies of the fora; and

    (6)  the familiarity of the trial judge with the applicable state law in diversity cases.  Id.

There is, however, "no definitive formula or list of the factors to consider" and, ultimately, courts must "consider all relevant factors to determine whether on balance the litigation

would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. (quotation and citation omitted). As the Third Circuit has explained, section 1404(a) was "intended to vest district courts with broad discretion to determine on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 545 F.3d at 883.

III. Analysis

The Court addresses the applicable private and public interest factors below.

A.    Private Interest Factors

1.    *Plaintiff's Forum Preference*

As set forth above, the Third Circuit has held that a plaintiff's choice of forum, the first private interest factor, is a factor to be weighed heavily in a section 1404(a) analysis. Generally, that choice is a "paramount concern in deciding a motion to transfer venue," Circuport v. Dlesk, No. 11-00369, 2011 WL 2214654, at *3 (D.N.J. June 6, 2011)(quotation omitted), and deference applies so "long as plaintiff has selected the forum for some legitimate reason." Intellectual Ventures, 2012 WL 297720, at *6.[3]

---

[3]    When a plaintiff chooses his home forum, the choice is entitled to even "greater deference." Circuport v. Dlesk, 2011 WL 2214654, at *3 (D.N.J. 2011)(quotation and citation omitted). Courts have come to different conclusions as to whether incorporation in a state, without more, qualifies that state as the plaintiff's home state. See

The dispute here centers on the fact that Plaintiff does not appear to have a meaningful connection with Delaware beyond its incorporation there.  Nonetheless, Plaintiff's incorporation in Delaware represents a rational and legitimate reason to choose to litigate in the state.  <u>Intellectual Ventures</u>, 2012 WL 297720, at *3.  Tessera has "chosen to avail [itself] of the rights, benefits, and obligations that Delaware law affords."  <u>Id.</u>  Accordingly, Plaintiff's choice of forum is entitled to paramount consideration and weighs against transfer.  <u>Continental Casualty Co.</u>, 61 F. Supp. 2d at 131.[4]

   2.   *Defendants' Forum Preferences*

---

<u>Intellectual Ventures</u>, 2012 WL 297720, at *3 (finding that incorporation alone was sufficient but recognizing the split in authority and comparing <u>In re TCW/Camil Holding L.L.C.</u>, No. 03-10717, 2004 WL 1043193, at *2 (D.Del. April 30, 2004) and <u>Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.</u>, 775 F. Supp. 759, 764 (D.Del. 1991) with <u>Praxair, Inc. v. ATMI, Inc.</u>, No. 03-1158, 2004 WL 883395, at *1-2 (D.Del. April 20, 2004)).  The parties dispute what level of deference should be given to Plaintiff in this case.  The Court need not resolve this dispute.  Regardless of whether Delaware is considered Tessera's home state or not, its forum choice is still considered a paramount consideration and Renesas has not met its burden to disturb that choice.  <u>See</u>, <u>e.g.</u>, <u>Continental Casualty Co. v. Am. Home Assur. Co.</u>, 61 F. Supp. 2d 128, 131 (D.Del. 1999)("Where, as the Defendants maintain here, the Plaintiff's choice of forum is not its [home forum,] the Plaintiff's choice is still given paramount consideration.").

[4]   Renesas argued in a supplemental submission that the Federal Circuit's recent decision in <u>In re Link_A_Media Devices Corp.</u>, 662 F.3d 1221 (Fed.Cir. 2011) supports the propriety of transfer here.  It does not.  There, the Federal Circuit acknowledged the significance that the Third Circuit affords the plaintiff's choice of forum, but found that the District Court had placed undue weight on the plaintiff's choice of forum where the plaintiff filed suit in Delaware and the only meaningful connection with Delaware was the <u>defendant's</u> incorporation in Delaware.  <u>Link_A_Media</u>, 662 F.3d at 1323.  Here, in contrast, as discussed above, the deference afforded Plaintiff's choice of forum is appropriately grounded in Plaintiff's <u>own</u> incorporation in Delaware.  <u>Intellectual Ventures</u>, 2012 WL 297720, at *3 (coming to the same conclusion).

9

As for the Defendants' forum preferences, only Renesas has moved to transfer this matter in the Northern District of California.  The remaining defendants have neither joined in the motion nor opposed it.[5]  Renesas has indicated, as described in more detail below, that the Northern District of California is a more convenient forum for it.  This is a legitimate and rational basis for Renesas' forum preference, but under Third Circuit law, it is not given the same weight as Plaintiff's preference. Intellectual Ventures, 2012 WL 297720, at *8; EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D.Pa. 2005)(holding that the defendant's choice of forum merits "considerably less weight" than plaintiff's choice).

     3.   *Where The Claim Arose*

Plaintiff argues, and Renesas does not dispute, that, because the infringement took place in many districts, including Delaware, this factor is neutral and does not weigh either in favor or against transfer.  The Court agrees.

     4.   *The Convenience Of The Parties As Indicated By*
         *Their Relative Physical And Financial Condition*

In addressing the convenience of the parties factor, Renesas argues at length why the Northern District of California would not only be a convenient forum for Tessera to litigate

---

[5]    Sony Electronics, Inc. and Sony Corporation agreed at a status conference that the Northern District of California would be "a more appropriate and convenient venue."  However, the Court has no similar statement from the other two Sony defendants who were not parties to the action at the time the statement was made.

this matter, but a _more_ convenient forum for Tessera.  It cites
to, _inter alia_, Tessera's operations there, the frequency with
which Tessera has litigated there, and Tessera's use of forum
selection clauses selecting California as an appropriate forum
for litigation.  These facts, to varying degrees, would appear
to support the convenience of the Northern District of
California for Tessera, but they do not establish that it would
be _more_ convenient for Tessera to litigate in the Northern
District of California.  That is because the best indicator of a
plaintiff's own convenience is the plaintiff's own choice of
forum.  See _ICG Am., Inc. v. Wine of the Month Club, Inc._, No.
3:09-cv-133, 2009 WL 2843261, at *9 (D.Conn. Aug. 28, 2009)(
recognizing, in the personal jurisdiction context, that the
"plaintiff's choice of forum is the best indicator of his own
convenience.")(quotation and citation omitted).  Tessera has
chosen to litigate this matter in Delaware and that choice
signals its belief that litigation here is most convenient for
it, for whatever its reasons.[6]  Indeed, Tessera continues to
press its choice of forum here.  As such, this Court will not

_____

[6]      That Tessera has only filed one patent infringement suit in the
Northern District of California in the past 10 years, was the defendant
in most of the litigation cited by Renesas, and has filed more patent
suits outside of California than in it, all support the notion that,
for whatever reason, Tessera finds litigation outside the Northern
District of California to be most convenient.  While Renesas has cited
to a prior submission from Tessera in favor of transfer to the Northern
District of California, that submission establishes little here.  It is
a 12-year old submission, submitted to support the notion that, in _that_
particular case, litigation in the Northern District was more
convenient than in the plaintiff's choice of forum.

presume to dictate what is most convenient, in this case, for
Tessera.  Neither should Renesas.  Therefore, Tessera's own
convenience does not weigh in favor of transfer.

With respect to Renesas, it has argued that its convenience
favors transfer.  Renesas notes that travel to California, from
its home base in Japan, is more convenient for its employees
than travel to Delaware.  This interest in convenience, though
legitimate, is not significant for three reasons.  First,
maintaining the proceeding here would only create greater
inconvenience to Renesas to the limited extent its employees are
required to travel to Delaware for trial (or to New Jersey,
where this Court ordinarily sits and where non-jury proceedings
would be held).  Depositions, in contrast, could be conducted in
California, Japan, or other locations of mutual convenience to
the parties. Van Slyke v. Capital One Bank, 503 F. Supp. 2d
1353, 1363 (N.D.Cal. 2007)("Now we turn to convenience to
potential witnesses. Depositions are not a factor since they
usually occur where witnesses reside anyway. Trial convenience
is what matters.").  Second, that burden may be entirely
speculative given the infrequency with which matters are
litigated to trial.  Intellectual Ventures, 2012 WL 297720, at
*10 (recognizing the infrequency with which matters go to
trial).  Third, whatever inconvenience a lawsuit in Delaware
would impose, Renesas' financial resources further diminish its

significance. Renesas is a large international corporation with billions in revenue and over 46,000 employees.  There is nothing in the record that would support a finding that litigating in Delaware would impose more than a minimal burden on them, let alone a materially greater burden than doing so in California, given California's already significant distance from Japan, where Renesas' witnesses are likely to be.  Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 202 (D.Del. 1998)(finding that defendants were capable of shouldering the financial burden imposed by the plaintiff's choice of forum since they were "multi-million dollar corporations with interests and activities spanning the globe."); Crystal Semiconductor Corp. v. OPTi Inc., 44 U.S.P.Q.2d 1497, 1504 (W.D.Tex. 1997)(noting that the relevant inconvenience is the extra inconvenience imposed by the plaintiff's choice of forum).  Renesas also notes that, if this action is maintained in Delaware, it would likely have to serve discovery subpoenas in the Northern District of California for non-party witnesses located there who will not appear voluntarily.  Because discovery subpoenas must always be issued from the court in which the deposition will be taken or production will be made (See Federal Rule of Civil Procedure 45(a)(2)(B) and (C)), the Court finds that this is not an additional burden.

The Court must also look to the convenience of the

remaining defendants.  As already noted, only two of the remaining Defendants have taken any position on Renesas' motion. Their statement, only alluded to by Tessera, provides no detail as to the basis for their position that suit in California would be more convenient.  The Court is therefore reluctant to speak on any of these Defendants' behalf.  Nonetheless, the Court notes that: (1) the extent that Sony Corporation, which, like Renesas, is a large, international, Japanese corporation with its principal place of business in Japan, is inconvenienced would likely be diminished for similar reasons to Renesas; (2) Sony Electronics Inc. likely has a stronger claim to convenience in California because its principal place of business is located there, but the strength of that claim is blunted by the fact that it is incorporated in Delaware (Intellectual Ventures, 2012 WL 297720, at *9 (recognizing that the defendant's place of incorporation can be a significant, though not dispositive, factor in the convenience of the parties analysis)); (3) Sony Ericsson Mobile AB, a Swedish corporation with its principal place of business in London, would likely find Delaware to be a more convenient forum for litigation than California; (4) Sony Ericsson Mobile Communications (USA) Inc., incorporated in Delaware and with its principal place of business in Atlanta, Georgia, would also likely find Delaware to be a more convenient forum for litigation than California; and (5) none of the

14

remaining Defendants appear, in light of the fact that none have moved in support of, or against, Renesas' motion to transfer, to believe that one forum is significantly more convenient than another. Hence, because two of the defendants would likely find California more convenient and the other two defendants would likely find Delaware more convenient, all to a limited extent, the convenience of these parties appears to be a neutral factor.

In short, weighing the convenience of _all_ of the parties, this Court finds that this factor weighs slightly in favor of transfer, given that: (1) the Northern District of California would be a convenient forum for Tessera (but not the most convenient based on its forum choice); (2) litigating in California would represent additional, though not significantly greater, convenience for Renesas; and (3) the remaining defendants' convenience is roughly balanced between California and Delaware.

### 5.   _Convenience for Witnesses_

The Court considers this next factor but only to "the extent that the witnesses may actually be unavailable for trial in one of the fora". _Jumara_ 55 F.3d at 879 (emphasis added). Party witnesses are not considered part of this analysis because party witnesses are presumed to be willing to testify at trial no matter the inconvenience. _Intellectual Ventures_, 2012 WL 297720, at *9; _Mato v. Window World, Inc._, No. 10-7617, 2011 WL

710473, at *5 (E.D.Pa. Feb. 28, 2011); Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., No. 09-290, 2009 WL 3055300, at *4 (W.D.Pa. Sept. 21, 2009); Sunds Defibraltor, Inc. v. Durametal Corp., No. Civ. A. 96-483, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997). Neither are non-party witnesses within 100 miles of the courthouse or within the District of Delaware considered as part of this analysis because the Court may compel their attendance by trial subpoena. Pub. Util. Serv. Corp. v. Leggett & Platt, Inc., No. 08-1860, 2008 WL 4610241, at *4 (E.D.Pa. Oct. 16, 2008)("Here, the court has the power to subpoena anyone located within the court's judicial district or within 100 miles of the courthouse. Thus, the relevant inquiry is whether there are nonparty witnesses who could not be subpoenaed.")(citations omitted). This leaves only non-party witnesses outside of the Court's subpoena power. Id. In weighing this factor, courts also assess the importance of the witness and whether the witness possesses relevant, non-cumulative information. Falu-Rodriguez v. Democracia USA, Inc., No. 10-3811, 2011 WL 31400, at *3 (E.D.Pa. Jan. 5, 2011)(calling on the defendant to identify unavailable witnesses, the testimony those witnesses would provide, and the importance of their testimony); Schering Corp. v. Amgen, 969 F. Supp. 2d 258, 268 (D.Del. 1997).

It is the defendant's burden to show both the unavailability of a particular witness and that witness'

importance to the defendant's case. <u>Id.</u>; <u>Olympia Steel Bldg.</u>

<u>Sys. Corp. v. General Steel Domestic Sales, LLC</u>, No. 06-1597,

2007 WL 1816281, at *7 (W.D.Pa. June 22, 2007); <u>Carnegie Mellon</u>,

2009 WL 3055300, at *4.  With respect to the former, while a

showing that a non-party witness is outside the Court's subpoena

power is a necessary predicate for, and supports, a finding of

unavailability,[7] courts have recognized that third-party fact

witnesses may voluntarily be willing to appear at trial and that

a particularized assessment of a witness' availability is

appropriate.  <u>See Intellectual Ventures</u>, 2012 WL 297720, at *11

---

[7]     Some courts in this Circuit have suggested that the unavailability of
compulsory process on a non-party witness may establish unavailability
at trial sufficient to support this factor, even where there is good
reason to believe that the witness would voluntarily appear at trial.
<u>See</u>, <u>e.g.</u>, <u>Teleconference Sys. v. Proctor & Gamble Pharmas., Inc.</u>, 676
F. Supp. 2d 321, 333 (D.Del. 2009)("The fact that representations are
given at this time that Jang and Kent, and perhaps other relevant
witnesses, may voluntarily appear in Delaware for trial, is not the
same as them being subject to compulsory subpoena power."); <u>Nilssen v.</u>
<u>Everbrite</u>, No. Civ.A 00-189, 2001 WL 34368396, at *2 (D.Del. Feb. 16,
2001)("A party need not allege that a witness definitely will be
unavailable for trial; rather, it is sufficient for purposes of venue
transfer analysis if the witness is not subject to a court's subpoena
power."); <u>Affymetrix, Inc. v. Synteni, Inc.</u>, 28 F. Supp. 2d 192, 205
(D.Del. 1998)(concluding that signed declaration from non-party
witnesses of their willingness to attend trial were insufficient);
<u>Sherwood Med. Co. v. IVAC Med. Sys., Inc.</u>, No. 96-305, 1996 WL 700261,
at *5 (D.Del. Nov. 25, 1996)(finding assurances of attendance by
counsel insufficient); <u>Crikton, Inc. v. Becton Dickinson Vascular</u>
<u>Access, Inc.</u>, 821 F. Supp. 962, 967 (D.Del.1993).

This Court disagrees for two reasons.  First holding otherwise would
result in an unnecessarily wooden application of this factor
inconsonant with the broad and flexible interest of justice and
convenience standard this Court is charged with applying. Second, since
the only relevant witnesses for this analysis are non-party witnesses
outside the Court's subpoena power, it would short-circuit the witness
<u>availability</u> inquiry into solely whether a defendant has identified a
witness with relevant information who is not subject to a Court's
subpoena power.

(noting that third-party fact witnesses may voluntarily appear at trial and that there was no evidence in that case that they would not); Carnegie, 2009 WL 3055300, at *4 (finding that the defendants had failed to show that a witness not subject to compulsory attendance would be unavailable where the witness had signed a declaration that he would be willing to attend trial); Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F. Supp. 2d 505, 510, 511-12 (D.Del. 1999)(finding that lack of subpoena power supported finding of unavailability but that non-party witnesses outside of the Court's subpoena power might have incentive to appear); ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 570-71 (D.Del. 2001)("Third, the court has some question whether it is correct that we should discount a witness's willingness to voluntarily appear and testify at trial in Delaware. Previous decisions in this court have suggested that the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed.  Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see whether a subpoena is necessary.  Certainly, where a witness reports that he or she is willing to appear and testify, it does not make much sense to assume he or she will not appear here and that the case should

therefore be transferred.")(citations omitted); Brenner v.
Consolidated Rail Corp., No. 09-cv-1574, 2009 WL 2710241, at *3
(E.D.Pa. Aug. 26, 2009)(finding that unavailability of subpoena
power did not, by itself, establish unavailability of non-party
witness given potential voluntary willingness of the witness to
testify).

Here, Renesas identifies several different sets of non-
party witnesses that it claims qualify as unavailable because
they are outside the subpoena power of this Court.  First, it
points to the non-party inventors of the patents at issue, who
are all outside the subpoena power of the Court, but believed to
be within the subpoena power of the Northern District of
California.  As noted, however, Tessera has secured declarations
from three of the four non-party inventors that they would
appear at trial.  It would thus be inappropriate, under these
circumstances, to conclude that they would be unavailable to
appear at trial.  ADE Corp., 138 F. Supp. 2d at 570-71 (coming
to the same conclusion with respect to inventors who had signed
a similar declaration).  It would also be premature to conclude
that the fourth witness, an inventor of one of the patents at
issue, would be unwilling to testify.  Id. at 571 ("[T]he court
expects that the inventors on defendant's patent would have some
incentive to cooperate with their assignee.").

Second, Renesas identifies its California subsidiary REA as

a possible non-party witness.  REA is also outside this Court's subpoena power but within the Northern District of California's. However, REA is <u>not</u> a named party to this litigation and Renesas has failed to offer any facts suggesting that it possesses important information in connection with this litigation.  Nor has Renesas offered a reason why REA would not voluntarily appear at trial.  This Court expects that REA would, as Renesas' subsidiary, voluntarily appear at Renesas' request.

Third, Renesas argues that there are several third party licensees that may have relevant information and that are outside this Court's subpoena power but inside the Northern District of California's subpoena power.  Renesas claims that these witnesses might have relevant information on damages, claim construction, non-infringement, and invalidity.  This Court finds that Renesas' concerns are overstated for three reasons.  First, with the exception of Renesas' claim regarding damages, Renesas provides no information to suggest that these entities have any information that would be of use on these topics.  Its case for obtaining information from third party licensees on these topics appears to be entirely speculative. <u>ADE Corp.</u>, 138 F. Supp. 2d at 569 ("In this case, KLA has not demonstrated that we can expect the employees from Applied Materials and Electroglas will be critical witnesses at trial. In fact, it would be an unusual patent infringement case where

issues of liability, validity and damages turned on the
testimony of a competitor."). Second, with respect to
information regarding damages, Renesas' claimed interest is
weak. Renesas claims that these third party licensees would
help it in assessing reasonable royalties if it is found liable.
The parties already have highly probative information concerning
reasonable royalties as Renesas itself previously licensed the
patents at issue from Tessera. Third, the inability to secure
the cooperation of third party licensees within the subpoena
power of the Northern District of California is not particularly
harmful here. While the parties dispute the number of relevant
third party licensees, it is undisputed that there are many.
Even assuming this Court lacks subpoena power over a sufficient
number of third party licensees, Renesas has offered no evidence
to suggest that there would be difficulty in securing the
voluntary cooperation of sufficient third party licensees.

     On the other hand, Tessera points out that the seven
prosecuting attorneys identified in initial disclosures by
Renesas are all located in the Northeast, with five of them in
New Jersey, one in the "New York City area," and one in
Massachussets. While Renesas takes issue with Tessera's
apparent failure to include them in its own initial disclosures,
it is not clear why this failure is material if Renesas believes
these witnesses to be relevant to its own case. Some of these

witnesses may be within the subpoena power of this Court though, on the information presently before the Court, it cannot say. All are clearly outside the subpoena power of the Northern District of California.  However, the Court cannot conclude that, to the extent they are outside this Court's subpoena power, they would voluntarily be willing to travel to Delaware but not to California.  The prosecuting attorneys would likely have strong incentive to appear at trial to inure good will with their former clients.

This Court is therefore skeptical that there are many, if any, relevant non-party witnesses outside this Court's subpoena power, or the California Court's subpoena power, who would not voluntarily appear at trial.  To the extent there are, they would be few and neither party has shown that they would be significantly prejudiced by their failure to appear.  Therefore, this Court finds that this factor is neutral.

6.   *Location of Relevant Books and Records*

The location of books and records is only material "to the extent that the files could not be produced in the alternative forum".  <u>Jumara</u>, 55 F.3d at 879.  While "it is improper to ignore" this factor "entirely" (<u>Link_A_Media</u>, 662 F.3d at 1224), it is often irrelevant today because of "recent technological advances" that enable the documents at issue in the litigation to be readily produced in even a distant forum.  <u>See</u>

22

<u>Intellectual Ventures</u>, 2012 WL 297720, at *11.  Here, Renesas has pointed to no documents that, if outside this Court's subpoena power but within the Northern District of California's, it could not obtain through a subpoena issued in that District. Neither has Renesas pointed to documents that it could produce in the Northern District of California but would be too burdensome to produce in this District.  Therefore, this factor is neutral.

    B.   Public Factors

    Renesas cites to two public interest factors that it claims support its motion to transfer: (1) practical considerations that could make the trial easy, expeditious, or inexpensive; and (2) the local interest in deciding local controversies at home. The parties do not dispute, and this Court agrees, that none of the remaining public interest factors are relevant here.

    1.   *Practical Considerations*

    With respect to the first factor identified by Renesas, Renesas argues that United States District Judge Claudia Wilken of the Northern District of California has experience dealing with closely related technology to that at issue in this litigation and has construed many of the same terms that are at issue in this litigation.  Renesas also argues that one of the patents construed there is the subject of two of its affirmative defenses.

Tessera disputes Renesas's characterization of the litigation and counters that: (1) none of the patents at issue in those litigations are at issue here and the two sets of patents are not related or in the same patent family; (2) the patents at issue here and the patents there do not share common inventors; and (3) the affirmative defenses asserted by Renesas are baseless and therefore irrelevant to this analysis.

Surely, where "several highly technical factual issues are presented . . . the interest of judicial economy may favor transfer to a court that has become familiar with the issues." Telcordia Techs., Inc. v. Tellabs, Inc., 2009 WL 5064787, at *3 (D.N.J. Dec. 16, 2009)(transferring case where transferee court had 11 years of experience with the specific patents at issue)(citation and quotation omitted).  While Renesas has only identified a single judge with relevant experience, Judge Wilken, that fact does not appear to be material given the court's ability to assign judges related cases.  See Northern District of California Local Rule 3-12(f)(3)(providing for reassignment of a related case to judge with prior related cases).  Tessera does not dispute that Judge Wilken's cases dealt with similar technologies.  Her prior experience is therefore of at least some relevance here.  However, there is significant dispute as to the extent to which Judge Wilken's prior experience would promote judicial economy.  At the heart

of this dispute is the closeness of the relationship between the patents here and the patents involved in the California suits. On one side, Tessera argues that the "337 and '106 patents are not 'related to' or even in the same 'patent family' as any of the patents" in the California litigations.  On the other side, Renesas claims that the patents are, in fact, "related."  In short, the parties have starkly contrasting views as to this case and the cases in California.  At bottom though, it is Renesas' burden to establish that this factor supports transfer. It has not provided this Court with sufficient information to resolve these disputes to conclude that Judge Wilken's prior experience would more than modestly promote judicial economy. The Court hastens to note, however, that if it becomes clear during this litigation that there are significant efficiencies to be gained from transfer to the Northern District of California, the Court can revisit the issue at that time.[8]  At this juncture, however, given the lack of sufficient evidence before this Court, this Court finds that this factor favors transfer only modestly.  NETGEAR, Inc. v. Ruckus Wireless, Inc., No. 10-999, 2011 WL 3236043, at *3 (D.Del. July 28, 2011)(finding the "fact that the pending California actions involve the same basic . . . technology as that at issue in this

---

[8]     If it is indeed the case that Judge Wilken has already construed the same claims on related patents, then transfer would appear to be appropriate, as this factor would weigh heavily in favor of transfer.

lawsuit . . .is not compelling.")(citing to Praxair, Inc. V.
ATMI, Inc., Civ. No. 03-1158, 2004 WL 883395, at *2 (D.Del.
April 20, 2004)(finding judicial efficiency lacking where
patents related to same technology field but "involve[d]
different patents, claims, inventors, prosecution histories and
a different set of alleged infringing activities.") and Auto,
Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc., Civ. No. 06-
187, 2006 WL 3783477, at *3 (D.Del. Dec. 21, 2006)("nothing in
the Detroit lawsuits yields any potential savings in judicial
economy, given the attenuated connection between those patents
and the patents here in suit.")).

    2.   *Local Interest*

    Delaware has a significant interest in this dispute since
the Plaintiff and two of the five Defendants - Sony Electronics
Inc. and Sony Ericsson Mobile Communications (USA) Inc. - are
Delaware citizens.  Intellectual Ventures, 2012 WL 297720, at
*13. The Northern District of California also has a significant
interest in the dispute given Tessera's own presence there.  Id.
None of the other parties are alleged to have a significant
presence in the Northern District of California or this
District, as Sony Electronics Incorporated is located in the
Southern District of California and Renesas' ties to the
Northern District are through its subsidiary.  Therefore, on
balance, this factor is neutral.

IV.   <u>Conclusion</u>

As set forth above: (1) most Jumara factors are neutral; (2) Plaintiff's choice of forum weighs against transfer; and (3) the few factors favoring transfer are all modest.  Weighing all of these factors together, this Court concludes that Renesas has failed to meet its burden of demonstrating that the balance of convenience is strongly in favor of transfer.  Accordingly, the Court will exercise its discretion and deny Renesas' motion to transfer, without prejudice.  An accompanying Order shall issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: <u>March 30, 2012</u>