IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TESSERA INC., <br><br> Plaintiff, <br><br> v. <br><br> SONY ELECTRONICS, INC., et al., <br><br> Defendants. | Civil No. 10-0838-RMB-KMW |

### ORDER

BEFORE THE COURT are the following applications: (1) Plaintiff Tessera's motion to compel foundational discovery [Doc. No. 137]; (2) Defendant Renesas's motion to compel discovery related to prior litigation [Doc. No. 157]; and (3) Tessera's motion to compel discovery regarding, inter alia, initial disclosures, employee witnesses, and non-public technical documents [Doc. No. 159]. The Court has reviewed the submissions of the parties in accordance with Fed. R. Civ. P. 78, and oral argument for the above motions was heard on July 17, 2012.

### Background

This is a patent infringement case involving semiconductor packaging technology. Tessera is an American corporation in the business of developing and patenting semiconductor packaging products. Sony is a global electronics manufacturer, and provides

1

consumer electronics and related devices for sale throughout the world. Renesas is a corporation specializing in the manufacture, design, and sale of semiconductor products. Both Sony and Renesas are Japanese corporations, with their principal places of business in Japan.

Tessera holds a number of patents related to semiconductor packaging technology, and licenses its intellectual property to many manufacturers and packaging companies in the semiconductor industry. In the instant matter, Tessera alleges that defendants have unlawfully used Tessera's technology by making and selling products that infringe patents held by Tessera.

The patents-in-suit, U.S. Patent Nos. 6,054,337 (the "'337 patent") and 6,885,106 (the "'106 patent"), both feature claims related to multi-chip semiconductor packages arranged in vertical stacks. That is, both patents relate to semiconductor products where multiple chips are stacked, one on top of another, typically for the purpose of facilitating their use in electronic devices where space is at a premium. The '106 patent relates to stacked semiconductor packages less than 1.2 millimeters high featuring moveable terminals, while the '337 patent relates to a method for assembling stacked semiconductor packages featuring, inter alia, a flexible substrate with conductive traces and flexible leads connected to the outer ends of said conductive traces, as well as conductive terminals connected to some of said traces.

Tessera filed its complaint against Defendants without

identifying allegedly infringing products with specificity. At the initial scheduling conference, the Court set forth a discovery schedule that directed Tessera to "provide to Defendants their preliminary infringement contentions. The infringement contentions shall include claim charts identifying patent claims and accused product(s) where each element of each asserted claim is allegedly found." (See August 3, 2011 Scheduling Order, Doc. No. 54). Defendants allege that they understood said scheduling order to require Tessera to identify with specificity the products it was accusing in its preliminary infringement contentions ("PICs"). Tessera went on to provide PICs that identified 12 Renesas and 15 Sony products. Shortly thereafter, Tessera served Defendants with a number of discovery requests that cover accused products beyond those identified in Tessera's PICs. Tessera's discovery requests included a definition for accused products that Defendants allege is overly broad, and requires Defendants to identify allegedly infringing products in their own product lines. Defendants subsequently objected to Tessera's definition of accused products, and only produced documents responsive to the products identified by Tessera in its PICs. As a result, Tessera demanded that Defendants concede that all of their stacked-chip products fall within Tessera's infringement contentions, and filed the instant motion to "confirm that the proper scope of discovery in this case includes all of Defendants' components in which multiple semiconductor[s] are arranged in a 'stacked' position, as well as

3

any products using (or designed to be used with) those components, and that discovery is not limited to the products specifically identified by name and model number in Tessera's PICs." (See Tessera's April 6, 2012 Letter at *8, Doc. No. 137).

## DISCUSSION

Presently, there are three discovery motions pending before the Court. The Court will address each of these motions in turn.

### 1. Tessera's Motion to Compel Foundational Discovery

Tessera requests that this Court compel Defendants to identify all of their multi-chip stacked semiconductor products, and provide information about them. (See Tessera's Motion to Compel, Doc. No. 137). Defendants assert that the dispute at issue centers upon the definition of "Your Products" used in Tessera's discovery requests. (See Renesas's April 20, 2012 Letter, Doc. No. 145). Specifically, Tessera seeks discovery from Defendants relating to:

> All of [Defendants'] electronic components, packages, or assemblies (including package-on-package modules and assemblies) made, used, sold, or offered for sale in the United States, or imported into the United States, since October 1, 2004, *that contain two or more semiconductor chips arranged in a vertical stack*, as well as any products, reference designs, modules, or circuit boards using (or designed to be used with) any of

4

>             these components, packages or assemblies).
>
>             [emphasis added]

(See Doc. No. 137, Ex. E, Tessera's First Notice of Deposition, at *2). Defendants argue that the above definition is overly broad, and would potentially cover hundreds of multi-chip semiconductor products, or "chip stacks," that do not infringe the patents-in-suit. (See Renesas's April 20, 2012 Letter, Doc. No. 145).

Tessera's preliminary infringement contentions ("PICs") explain that Defendants are infringing the patents-in-suit "by, inter alia, making multi-chip semiconductor packages and products containing the same in the manner claimed in the [patents-in-suit], as well as by selling, offering for sale, using, and/or importing such packages and products." (See Tessera's April 6, 2012 Letter, Doc. No. 137). While Tessera's PICs provided illustrative examples of Defendants' allegedly infringing products, Tessera asserts that Defendants offer an assortment of other multi-chip packages that are similar to these illustrative examples. Id. Thus, Tessera argues that, because Defendants design and sell these products, they necessarily have easy access to information about how these products are made and where they are used. Id. Tessera argues that the expense and burden of identifying these packages, purchasing them on the open market, and reverse engineering them would be enormous and essentially impossible. Id. Moreover, Tessera also asserts that it has met and conferred with Defendants to no avail regarding this issue. Id.

>             these components, packages or assemblies).
>
>             [emphasis added]

(See Doc. No. 137, Ex. E, Tessera's First Notice of Deposition, at *2). Defendants argue that the above definition is overly broad, and would potentially cover hundreds of multi-chip semiconductor products, or "chip stacks," that do not infringe the patents-in-suit. (See Renesas's April 20, 2012 Letter, Doc. No. 145).

Tessera's preliminary infringement contentions ("PICs") explain that Defendants are infringing the patents-in-suit "by, inter alia, making multi-chip semiconductor packages and products containing the same in the manner claimed in the [patents-in-suit], as well as by selling, offering for sale, using, and/or importing such packages and products." (See Tessera's April 6, 2012 Letter, Doc. No. 137). While Tessera's PICs provided illustrative examples of Defendants' allegedly infringing products, Tessera asserts that Defendants offer an assortment of other multi-chip packages that are similar to these illustrative examples. Id. Thus, Tessera argues that, because Defendants design and sell these products, they necessarily have easy access to information about how these products are made and where they are used. Id. Tessera argues that the expense and burden of identifying these packages, purchasing them on the open market, and reverse engineering them would be enormous and essentially impossible. Id. Moreover, Tessera also asserts that it has met and conferred with Defendants to no avail regarding this issue. Id.

>             these components, packages or assemblies).
>
>             [emphasis added]

(See Doc. No. 137, Ex. E, Tessera's First Notice of Deposition, at *2). Defendants argue that the above definition is overly broad, and would potentially cover hundreds of multi-chip semiconductor products, or "chip stacks," that do not infringe the patents-in-suit. (See Renesas's April 20, 2012 Letter, Doc. No. 145).

Tessera's preliminary infringement contentions ("PICs") explain that Defendants are infringing the patents-in-suit "by, inter alia, making multi-chip semiconductor packages and products containing the same in the manner claimed in the [patents-in-suit], as well as by selling, offering for sale, using, and/or importing such packages and products." (See Tessera's April 6, 2012 Letter, Doc. No. 137). While Tessera's PICs provided illustrative examples of Defendants' allegedly infringing products, Tessera asserts that Defendants offer an assortment of other multi-chip packages that are similar to these illustrative examples. Id. Thus, Tessera argues that, because Defendants design and sell these products, they necessarily have easy access to information about how these products are made and where they are used. Id. Tessera argues that the expense and burden of identifying these packages, purchasing them on the open market, and reverse engineering them would be enormous and essentially impossible. Id. Moreover, Tessera also asserts that it has met and conferred with Defendants to no avail regarding this issue. Id.

The Defendants argue that Tessera is not entitled to discovery on non-accused products, and that Tessera's effort to discover information related to all electronic components, packages, and assemblies that contain two or more chips in a vertical stack is an improper attempt to shift the burden of evaluating infringement to the Defendants. (See Sony's April 23, 2012 Letter, Doc. No. 146). Sony also argues that Tessera's requests are not reasonably likely to lead to relevant evidence, as Tessera is seeking discovery on a broad class of subject matter, a substantial amount of which has no relationship to Tessera's infringement claims. Id. Similarly, Renesas notes that even in cases where discovery into unidentified products was permitted, the definition employed "must 'identify with specificity' the type of product at issue as well as the component, characteristic, or element of the product that will render it infringing," and that Tessera's proposed definition in the instant matter fails to meet even that standard. (See Renesas's April 20, 2012 Letter, Doc. No. 145) (citing Ltd. v. R.R. Donnelley & Sons Co., 2007 WL 2034286, *3-5 (N.D. Ohio July 10, 2007)). However, the Sony defendants concede that if this Court does find that Tessera is entitled to conduct limited discovery on non-accused products, the definition of said products should be construed much narrower than the one proposed by Tessera in this case. (See Sony's April 23, 2012 Letter, Doc. No. 146).

Tessera cites Phillip M. Adams & Assoc. v. Dell, 2008 U.S. Dist. LEXIS 4485 (D. Utah, Jan. 22, 2008), in support of its

6

motion. In its opinion, the Phillip Adams court noted that "the patent holder is not in a position to know the extent of the alleged infringer's activities but requires discovery from the alleged infringer to discover the potential extent of infringement." Id. at *11. The court further noted that "thwarting discovery or limiting the lawsuit to the infringement known by the patent holder before suit is filed would result in piecemeal litigation and incomplete remedies or force the patent holder to undertake Herculean investigation to find all the alleged infringer's products on the open market." Id.

    The Court finds that Tessera's "Your Products" definition, as directed to defendants, is overly broad, as it includes the production of information beyond the patents-in-suit and is not limited to the applicable time frame. In addition, with respect to the Sony defendants, such a definition would require the production of information related to Sony products that do not use chips internally manufactured by Sony. Moreover, requiring defendants to abide by such a definition in the discovery process would be unduly burdensome, as the nature of Sony's and Renesas's businesses would require the production of numerous products that are not alleged to infringe upon the patents-in-suit. Accordingly, Plaintiff shall revise the "Your Products" definition so that same is sufficiently narrowed to the alleged infringement on the patents-in-suit and relevant time frame.

    As for the PICs, the Court did not intend to limit discovery

7

to products identified in Tessera's PICs for the duration of the litigation. Rather, the PICs serve as a mechanism to facilitate discovery during the initial stages of the litigation. This Court, like the court in Phillip Adams, finds that limiting discovery to the products accused in Tessera's PICs is contrary to "the broad and liberal" policy of discovery promoted by the Federal Rules of Civil Procedure. Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999). Indeed, the inherent purpose of discovery would be stymied by limiting all discovery requests to the infringement known by the patent holder during the early stages of litigation.

**2. Renesas's Motion to Compel Discovery Related to Prior Litigation**

Renesas requests that the Court compel Tessera to produce certain documents from its prior litigations. (See Renesas's June 15, 2012 Letter, Doc. No. 157). Essentially, Renesas argues that because Tessera is a licensing company that generates much of its revenue from licensing patents, it has a long history of patent litigation that is relevant to the issues in this case. Id. Renesas notes that Tessera has asserted patents, including one of the patents-in-suit, against a non-party, Amkor Tech., in arbitrations. Id. Accordingly, Renesas argues that there is substantial analysis of the terms of the claims that are asserted in this case that has been done in the past and that would be relevant to the interpretation of claims in this litigation. See id. Renesas first requested documents related to prior litigations

8

in October, but Tessera has refused to produce all of said documents. Id.

Tessera argues that production of all documents from prior Tessera litigations is not called for and that Renesas's motion to compel should be denied. (See Tessera's June 29, 2012 Letter, Doc. No. 161). Tessera also argues that, since counsel for Renesas represented a non-party in one prior Tessera case, the documents Renesas now seeks to compel are literally stored in the offices of Renesas's counsel.[1] See id. Moreover, Tessera asserts that the timing of Renesas's motion to compel indicates that Renesas waited to file it until one day before the deadline for completing claim construction discovery, thereby precluding any possibility that the motion would be heard before claim construction discovery is completed and disputed claim terms exchanged. Id. Further, Tessera asserts that Renesas's motion seeks documents that are the subject of confidentiality orders in other proceedings, and therefore the motion is procedurally improper. Id.

A party is entitled to discovery regarding any matter that is relevant to any party's claim or defense that is within the permissible scope of discovery. See Fed. R. Civ. P. 26; see also

---

1. While Tessera notes that Renesas's current counsel represented Amkor in the arbitration proceedings at issue, this fact is of no significance to the instant motion. The requested documents that are the subject of this motion belong to the client, not counsel, and are therefore not in the possession of Renesas, an entity that was not a party to said arbitration proceedings. See United States v. Cooper, 1997 U.S. Dist. LEXIS 3333, *35-36 (D. Colo. Mar. 19, 1997) (citing In Re Grand Jury Proceedings, 727 F.2d 941, 944 (10th Cir. 1984).

9

<u>Inventio AG v. Thyssenkrupp Elevator Ams. Corp.</u>, 662 F.Supp.2d 375, 380 (D. Del. 2009); <u>Wyeth v. Impax Labs., Inc.</u>, 248 F.R.D. 169, 170-71 ( D. Del. 2006).  For the reasons set forth on the record, Tessera shall produce the following documents related to prior litigation involving the '106 and '337 patents, as such discovery relates to moveability and claims construction:

1.  Documents identifying terms for construction in the Amkor arbitrations.
2.  Documents identifying proposed constructions in the Amkor arbitrations.
3.  Markman briefing and supporting exhibits in the Amkor arbitrations.
4.  Markman Orders entered in the Amkor arbitrations.
5.  Expert reports from the Amkor arbitration to the extent the expert offers an opinion construing the claims in the '337 patent.
6.  Orders setting forth any partial award in the Amkor arbitration on the issue of claim construction and infringement of the '337 patent.
7.  Documents from prior litigation or ITC proceedings identifying proposed constructions for claim terms to the extent said documents relate to the "moveable" term of the '106 or '337 patents; said documents shall include: (a) Markman briefing and supporting exhibits; (b) Markman Orders entered by

the court or ITC; (c) expert reports to the extent the expert offers an opinion construing the moveable term of the '106 or '337 patents; (d) final Orders and interim Orders setting forth any determinations with respect to the moveable term.

With respect to the Amkor arbitration, Tessera shall notify Amkor of Defendants' discovery requests in this litigation and seek their consent to provide the relevant documentation. The production shall be limited to information contained in documents related to the '337 patent or moveability. All other information shall be redacted.

**3.   Tessera's Motion to Compel Discovery Regarding, inter alia, Employee Witnesses and Non-Public Technical Documents**

Tessera also seeks to compel Defendants to "engage in discovery." (See Tessera's June 18, 2012 Letter, Doc. No. 159). Tessera contends that Sony has refused to identify its employee witnesses having potentially discoverable information and has not produced any non-public technical documents, and that neither Sony nor Renesas have produced licensing, sales, marketing, or financial documents. See id. Additionally, Tessera asserts that Renesas has acknowledged that its technical document production is incomplete, and that Defendants have refused to comply with their discovery obligations pertaining to infringement and damages pending the Court's decision regarding Tessera's motion to compel foundational discovery [Doc. No. 137]. See id.

11

Tessera asserts that Sony's initial disclosures do not identify any Sony witnesses, thus preventing Tessera from preparing for depositions. Id. Tessera asserts that Sony's refusal to disclose its witnesses is particularly problematic in the instant matter, as Sony has insisted that its witnesses must be deposed at the U.S. Consulate or Embassy in Japan, and therefore arrangements must be made months in advance. Id. Tessera argues that, to the extent Sony claims it has no witnesses, Sony should be precluded from presenting witnesses at trial. Id. Similarly, Tessera argues that Defendants' document productions are incomplete, as Defendants have "unilaterally decided to cease all production of infringement and damages documents [...] until the Court rules on the pending motion by Tessera to compel discovery." See id. at *4. Tessera has received no licensing, marketing, or finance documents from Defendants, and has no access to Defendants' technical information. See id. This conflict has allegedly hindered Tessera in its ability to prepare for depositions. Accordingly, Tessera seeks an order from this Court compelling defendants to produce (1) the names of all witnesses with potentially discoverable information, as required by Rule 26; and (2) documents responsive to Requests for Production Nos. 4-7, 26, 41, 44, 46-51, 54-56, 65-70, 90-91, and 93-97 regarding the technical operation, use, intended use, design, and manufacture of products named in Tessera's preliminary infringement contentions, as well as all responsive documents concerning the revenues, costs, profits, purchase, marketing, or

sales for such products and all responsive documents concerning licensing practices and policies. See id. Additionally, Tessera requests that any witnesses or documents not so provided be excluded from trial pursuant to Fed. R. Civ. P. 37(c)(1). Id.

Defendant Renesas, in response, asserts that Tessera's motion is unsupported and misplaced, and that Renesas is producing on a "rolling and timely basis" the infringement and damages documents sought by Tessera. (See Renesas's July 5, 2012 letter, Doc. No. 163). Renesas asserts that it has produced technical and other related documents for each of the products that Tessera has specifically accused of infringement, and that Tessera's assertion that Renesas has refused to produce any further documents is unfounded.[2] Id. Sony also opposes Tessera's motion, alleging that Tessera failed to properly meet and confer with Sony prior to filing its motion to compel. (See Sony's July 5, 2012 Letter, Doc. No. 165). Further, Sony argues that it should not be required to identify any other witnesses at this point, because Tessera's infringement contentions do not accuse any products that contain chip assemblies manufactured by Sony. See id. Moreover, Sony argues that "almost every one of the document requests that are the subject of Tessera's letter includes the disputed term 'Your Products.'" Id. Thus, Sony argues that since the "Your Products"

---

2. Apparently, this particular discovery dispute between Tessera and Renesas was resolved prior to oral argument, as the parties conceded that the only remaining dispute regarding this motion existed as to Sony.

13

issue has not yet been resolved, Tessera's motion to compel is premature. See id.

Oral argument was instructive with respect to this final issue in dispute. Significantly, at the oral argument Plaintiff's counsel described this final area of contention as related to document and witness issues that are required to be disclosed by Sony pursuant to Rule 26(a)(1)(A). Indeed, all counsel concede that the issue related to documents subject to this motion is resolved by the Court's ruling on the definition of "Your Products." To this end, counsel is referred to page *7, infra.

The so-called "witness issue" is two-fold. (See July 17, 2012 Transcript, at *67). First, as of the July 17, 2012 oral argument, neither Sony Electronics nor Sony Corporation had provided Rule 26 disclosures. If they have not already done so, same shall be provided within seven (7) calendar days of the date of this Order. Second, to the extent the Sony defendants assert that their inability to identify witnesses is "because the accused products are only the Renesas and the Qualcomm product[s]," and therefore do not implicate Sony employees, Sony shall include in its initial disclosure and/or supplement its initial disclosures to include, in accordance with Rule 26(a)(1)(A)(i), individuals likely to have discoverable information relating to internally manufactured Sony chips and other products that can now be identified pursuant to the revised "Your Products" definition. (See id. at *71).

Accordingly, for the reasons set forth above and for good cause

shown:

IT IS on this 6th day of August 2012,

**ORDERED** that Tessera shall revise the "Your Products" definition so that same is sufficiently narrowed to the alleged infringement on the patents-in-suit and relevant time frame; and it is further

**ORDERED** that Tessera shall produce discovery related to the Amkor arbitrations and prior litigation or ITC proceedings in accordance with this Order; and it is further

**ORDERED** that the Sony Defendants shall provide Rule 26 disclosures in accordance with this Order.

s/ Karen M. Williams<br>
KAREN M. WILLIAMS<br>
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb